This case is United States v. Patterson. Good morning, your honors. May it please the court, counsel. My name is Lillian Odongo, and I'm an assistant public defender in the District of Connecticut. And I'm here on behalf of the appellant Garfield Anthony Patterson. Mr. Patterson was charged with one count of illegal reentry, alleging that he was removed on April 15th of 2000 and was found in Middletown, Connecticut in 2019. He went to trial February of 2023 and jury returned a verdict of guilty. After closing, Judge Bolden, from defense's perspective, tipped the scale in favor of a guilty verdict when he responded to the juror's question and gave an instruction. The instruction improperly instructed the jury that the government had satisfied its burden of proof as to the second element of the offense and that error was not harmless. Judge Bolden should have directed the jurors to rely on their memory of the evidence and act as the finders of facts. Well, the question was whether there were any rules in place from 2000 to date regarding what travel documents had to be in the file. That was the question, right? Yes. I mean, how should the judge have answered it? The judge should have just left it at that because clearly the jurors had listened to the testimony. The judge should have said, I cannot answer your question or the record doesn't contain information that answers the question? That they should rely on the record and the evidence that was presented in terms of the documents from the air file and the testimony from specifically the two detention officers. So the court should have defied to the jury's assessment with respect to credibility and conflicting testimony and to its choice between the competing inferences that could have been drawn from the evidence. Let's assume there was an error. The trial judge gave what was perhaps a non-responsive answer. Wasn't there overwhelming evidence here? In other words, it was real clear that he was not a citizen of the United States and that he had previously been deported? We disagree because the sticking point was the second element, which was the element of removal. Had he been physically removed from the United States? And based on the testimony that was heard from the detention officers, they are contradicting themselves. Well, they couldn't remember whether they got on the plane, but they also testified that they would not have signed the documents. Their usual practice is actually to stand there and watch the plane take off, to watch the gate close and then watch the plane take off. That was their testimony, right? And that they would not have signed the document, the warrant, if they had not done that. Why isn't that enough? It's not enough because the two of them, first of all, contradicted each other. One of them talked about not even having gone to Jamaica and that there was no proof from their end that Mr. Patterson did make it to Jamaica, so was physically removed from the U.S. The second witness started off- It wouldn't be enough if they attested to the fact that he got on the plane and took off and they saw the plane take off? Honestly, they couldn't, though. It would have been enough if that is exactly what they testified to. The second one who was more firm about what she saw during direct, she said he got on the plane and I watched him get on the plane and then ultimately I made sure that the doors were closed. But the difference is- Why isn't that enough? It's not enough because on cross when we came back, she said she doesn't remember. She was just testifying about the procedures at the time, but she said that she could have gone to Jamaica, too. So there was discrepancy as to whether they did. Did they see what they saw or are they talking genuinely? Did she testify and help me with my memory of the record? Yes. She testified that she signed the warrant twice. She would sign it the second time only after the doors closed or something to that effect? She did say that, but on the flip side, during cross, she came back and was like, well, maybe I did go to Jamaica or maybe I did not. So she could not say one way or the other whether that was signed in Miami. She said I may or may not have gone to Jamaica, but I would not have signed the warrant twice, assuming I didn't go to Jamaica, in effect, unless I saw the doors closed. But, again, it's up to the jurors. The jurors listened to her testimony, both their testimonies. I guess the question is whether, I mean, would these instructions have been fine if the district court had said instead of is sufficient proof, he said may be sufficient proof. So it may be a properly executed warrant with testimony, may be sufficient proof the defendant was, in fact, physically deported. I also instruct you that there is nothing in the record as to the rules regarding what has to be in the A file at the relevant time. And may be would have been helpful. And I think we did make those arguments in our papers that he ticked the scale when he said is sufficient versus may be sufficient. And the case that he relied on, the Harvey case from this court, was really just addressing the proper standard of appellate review in an illegal reentry case. And the panel was responding to Harvey's argument that the jury could not rely. And the answer that was given was the jurors could conclude, which is may be. But the judge, and that's why it was really, what did he use and what did that mean to the jurors? Saying is versus may be and then asking the jurors to rely on their memory and the evidence that was provided. If, let's assume, let's pretend like the judge said to the jury when the judge was reading the instructions. Element two, you can conclude that the government has met its burden of proof as to element number two. And then it went on to the others. Clearly would be error. Court can't tell the jury that the government's satisfied an element. Would that be structural error or would that be subject to harmless error review? I don't, there's no cases. I'm just wondering about this. Honestly, I just, I would just say it's error and it's harmful error. Okay. And just to clarify, so Judge Bolden, when he started, when we were having the back and forth, and as you can see on the record, the government was really silent. It was just Judge Bolden and defense that were going back and forth. And sometimes with the argument itself, it almost seemed like defense wasn't putting so much effort, but it was really towing the line between being respectful and not cutting off the judge. But we were cut off several times. And Judge Bolden initially indicated it was a fact question. And he wanted to remind the jurors that they are the finders of fact. And then he quickly shifted and decided it was a question of law. And that's when he says that the jurors, the evidence is sufficient, is what he tells the jurors. And that meant that they did not need to deliberate further on that issue, which was the second element. In fact, later when defense reiterated that any gaps in factual records were the government's problem, it was really just saying that they bring the case, they charge, the burden of proof is on them, not defense. We could sit there and not necessarily have to present any evidence and just argue. But the court stated that the fact that the jury appeared to believe it could acquit if it found the factual record wanting was wrong. So he basically, when we were arguing back and forth, he said that. So in his mind, it seems, at least it seemed to us as defense, he's saying, oh my God. They might not convict him because of this. And so he says it is sufficient, which means move on if that was the hang up. And clearly that was the hang up. And I take it that's because sufficient to allege jury means something different from what it means to us as appellate lawyers. Yes. The judge also made it clear that they would have to find that it was properly executed. They would have to believe the testimony of the officers. The jury still had to find that the government had met its burden of proof. Yes. Doesn't that help alleviate the burden there might be? I think what he said initially was the warrant that was executed and said is sufficient. The warrant. He said a properly executed warrant. Yes. And the jury could have found that this was not a properly executed warrant. I would submit that the fact that he said the evidence is sufficient swayed the jurors. And really, in closing, if the jurors had been told by defense that the travel documents were required for a conviction and asked to acquit, the government would have rightly objected. And also, if the jury had voted to convict with no notes to the court, we would have no basis for an appeal. But that was not what happened. We were given a sneak peek into the jurors' mind. It shows that the judge's answer actually did change their mind. And in summary, the court instructed the jurors in no uncertain terms to find that the government had proved the second element of the offense. The jury deliberated for two hours. And then that's before the question was asked. It was the one question that they asked. Then they came back. And when we say 15 minutes later, it's from the time that they walked back into the jury deliberation room and then come back. So it's really not 15 total minutes of deliberating. And they came back with a response that they found that he was guilty. So clearly, that did tip them off. The phrase, is sufficient, said, that's the second element that you are having issues with. Then move on. It is sufficient. And he says whatever has been said. The judge says it. The jurors are going to defer to the court. And that's what they did. And when we were arguing to the jurors about the second element, it was really just a physical departure. And the removal. Because Mr. Patterson wasn't found entering the U.S. He was found in Connecticut already. Versus if he was found at the border, then we would not even have had this kind of discussion. The idea is he was in Connecticut. And removal means removal from the United States physically by the immigration authorities. Defense argued about reasonable doubt, which was not a mistake. We said it comes from evidence, lack of evidence, and conflict of evidence. And we argued that the factual records were the government's problem, not ours. We also asked the jurors to consider whether the government did not exhaustively pursue every piece of information if they had met its pardon to the exclusion of reasonable doubt. That was part of the instruction that was also provided. So we could argue that just because they have these documents, there was the travel documents. And we asked during cross if they had traveled, depending on where they are. Because they didn't have the memory of that. At least one of the second witness testified that she would have had a travel document and brought it back. And that would clearly say one way or the other whether she had made it to Jamaica or not. It was very confusing to the jurors. And so we just argued the air file, which the government had presented in evidence, did not have that information. And the government was not able to prepare them for that question about what about the itinerary? Did you make it? Did he make it? Was there a travel document for our client? Now you've reserved two minutes for rebuttal time. I apologize. May it please the court. My name is Neeraj Patel and I represent the United States in this case. This court should affirm the judgment below because first, the district court properly denied the defendant's motion to suppress. And second, the district court did not err in responding to the jury's note during its deliberations. You may want to move the podium down a little bit. I'm having a little trouble here. Sorry, Your Honor. Is that better? Yes, thank you. Move this over too. So I'm going to turn first to the jury note. And it's important to put the jury's question into context here. During the trial, the government demonstrated that Mr. Patterson had been previously deported by introducing the warrant of deportation and the testimony of the two deportation officers who signed the warrant and witnessed his deportation. And then during closing argument, the defense challenged the government's evidence about Mr. Patterson's deportation by asking the jury to consider why the government had not introduced any travel itineraries to corroborate the other evidence. The defense asked questions like, did the departure happen? Why is there not a travel packet in the A file for you to see or the itinerary? Where is the flight manifest? It asked the jury to consider whether that flight happened and whether the deportation officers actually observed what they said they observed. That's a perfectly proper argument, right? I mean, they're just saying there's an absence. Wouldn't we expect to see the travel manifest? It's not in there. Yes, absolutely, Your Honor. It is a proper argument for the defense. In fact, Officer Pollitt testified that there should have been a copy of travel documents in the file when she was asked a question about whether or not she went. Didn't she? So the testimony, I think, is a little bit ambiguous. I think Officer Bell may have been asked a question at one point. And should those travel documents be in some repository either in your office or in the A file? And she said yes. So I think the testimony didn't clearly say it would be in the A file. I think the question posed at least at one point in the transcript, and I can find it in the record, was it would be in your office or in the A file. And Officer Bell said yes. So when the court received this jury note, which asked if there were— Those travel documents wouldn't show that he left anyway, right? I mean, it was just an itinerary, which would be the expected travel route. That's correct, Your Honor. You would still need the witness testimony to show that they put him on the plane and that the plane actually took off. The manifest would just show he was a booked passenger. When someone is deported like this and they're put on without any police officer accompanying the person, I mean, the person just goes and becomes like any other traveler? Or is there some arrangement made for the person while they're on the flight? I think one of the officers testified that they accompanied the passenger to the jet bridge. They give the travel packet to the first officer, and then they remain on the jet bridge. Right. What happens when—I'm just wondering, if they get on the plane, are they just treated like every other passenger? I think it would depend on the circumstances. In this case, I think the testimony doesn't say, but I think that's what would happen. Sometimes you may have dangerous defendants or maybe detained defendants, in which case maybe there would be some kind of security. Or if they're going to be turned over to authorities at the other country, I suppose. I suppose it depends on which country they're going to. I don't think there was any testimony in the record of what would be the procedure for a defendant like Mr. Patterson, other than they would put him on the jet bridge, wait until the door closed and it pulled away. And if Officer Bell testified, then she would remain at the airport until the plane actually physically took off. The trial court's instruction in response to the note, I don't think it was actually responsive. It did go beyond the question to some extent. I mean, how do you—is that something of concern here? No, Your Honor. I don't think it was concern because while it may not have answered directly yes or no the jury's question about whether there were rules in place, which is what their question was, which I think the district court sensed that the jury was confused about whether the travel itineraries were legally required to be kept in the A file. I don't think the judge's question directly answered that. But I don't think it's something we need to be concerned about because we have to look at the totality of the instructions as a whole. And here, after the court gave its immediate response from Harvey, it also reminded the court that it is for the jury to determine whether the government has met its burden of proof. And the judge had— So the argument is that the instruction that a properly executed warrant coupled with testimony is sufficient proof was in essence directing the jury to convict. I don't believe so, Your Honor, because we have to look at all the other instructions the district court gave, which it repeatedly instructed the jury that it had to find that the government had met its burden of proof. Consistent with the defense's argument about the lack of travel records, the court instructed the jury that it could consider the absence of evidence and consider if the government did not exhaust every piece of information in determining whether the government had met its burden. And it instructed the jury that it had to carefully scrutinize the testimony of the witnesses and any other matter in evidence which could help the jury decide the truthfulness of the witness testimony. It should consider the witnesses' memories and their credibility. And if you look at the instructions as a whole, it did not preclude the jury from finding that it had not met its burden. Consistent with the defense's argument, the jury could have found that without the travel itineraries or additional travel documents, the testimony of the officers was not credible, that they did not witness him, Mr. Patterson, board the flight, that maybe the flight didn't exist, that the flight information listed on the warrant was not believable, or that the warrant was not properly filled out or not properly executed, I think as Your Honor referred to earlier. And so it could have returned a verdict of not guilty because it did not believe the witness, the officer's testimony, or that this warrant was properly filled out or properly executed. So the ultimate question here is, you know, whether if the court could have done something different, could have answered the question differently, that's not the question. The question is whether what it did do was legally erroneous. And here it was not legally erroneous. But even if there was error, Your Honor, there was overwhelming evidence of guilt admitted at trial. As Your Honor noted, there was the warrant of deportation, the associated testimony from the two officers, and the defendant's own admission. Was there testimony that would have made the jury think one way or another about what it meant to say that a warrant was properly executed? I mean, you said he extracts them a properly executed warrant coupled with testimony regarding procedures. Is sufficient proof? And I guess I'm asking myself, what would they make of what it means to say a warrant, what is a properly executed warrant? Well, the testimony, there was testimony of both officers that just talked about how they would go about filling this warrant. They would, I think Officer Bell hand wrote the information. They could have disbelieved her testimony that she made that up. They could have not trusted her memory since she couldn't remember if she went to Jamaica or not. They could, without the travel itineraries, disbelieve that she actually wrote that in at the time or afterwards, or she witnessed him board the plane. So I think there was testimony in the record that described how that warrant is filled out and executed. Is the warrant actually in the record, in the appendix? I couldn't find it. It's not in the appendix, Your Honor. It was admitted. Did Mr. Patterson, I mean, his signature is on it. Did he acknowledge that he was deported? Or that he was being put on the plane? No, because he would sign that before he boards the plane. Right, so you were starting to say defendant's admission, what admission? Sorry, the admission that actually is the subject of the motion to suppress, that he was in the country illegally. Well, that goes really to the first element, whether he was a citizen. I think it goes to that element and it just goes. During the suppression hearing, did he say, did he acknowledge that he had been deported? No, Your Honor. And the jury never heard an admission that he had been deported? No, Your Honor. No, Your Honor. So the evidence of deportation is the paperwork was set up so that he would be deported. And then the testimony that they saw him get on the plane and waited. And the testimony that she would not have signed it until she witnessed the plane take off. What about the argument that the testimony was inconsistent, they couldn't remember? Yeah, and I think. I mean, I would have thought that someone would remember whether they went to Jamaica. I think Officer Bell testified she had been doing this since 1989 and that she had deported thousands of people. And that sometimes she traveled to the other country, sometimes she didn't. And so she would not remember this particular one. But the important thing is she would not have signed the warrant here if she did not witness the deportation. Yes, Your Honor. I see that my time has expired and we haven't gotten to the second argument. But unless the court has any other questions, we would ask the court to affirm the judgment below. Thank you. Your Honor, I would just like to highlight two things. When the officers testified about the information, the travel documents, their own travel documents, and Mr. Patterson's travel documents, they said, and we even asked them, if you had traveled, like you traveled today to come to Connecticut to testify, you have to go back and tell your boss here is my travel information because the government is underpaid for that. And they said they would take back the travel documents, and then there was a repository, and from the repository they would go into the air file to confirm the travel happened. Now, I'll go back to the jury did scrutinize the testimony of the two witnesses and found them either unbelievable and they wanted something more. And that's why they asked that question. Why do you say they found the witnesses unbelievable when they convicted? Because they were told. And don't they hold true the evidence and the likeness favorable to the government because there was a conviction? They were told that it is sufficient, that the properly executed warrant and the testimony of the procedure is sufficient. That implies that they believed the two agents. At that point, they were listening to us. Doesn't the fact of the conviction imply that the jury believed the two agents? They did not believe the two agents. That's why they asked for corroborating information. And then when they were told that just the procedure, regardless of whether they believed the agents did go or the agents were testifying about what they observed, the fact that there is a properly executed warrant and just the testimony of the procedure was enough is what they were told. So we don't really know what they believed or not, but because they were essentially told they could convict on the basis of the signed warrant and the testimonies to the process, we don't know whether they otherwise would have done something different if they had been properly instructed. We would say we know just because of the wording that was used by the judge. And the judge characterizing the warrant as properly executed also adds to- He didn't characterize this warrant. He just said a properly executed warrant. He didn't say anything at all about the warrant in this case. Let me rephrase. I don't think we have to know. We don't have to know what the jury would have done to conclude that it's not harmless error. I guess that's what I was getting at. Or neither of you do. We don't really have to know, but what happened during the hearing and after the instruction and how quickly they came back with a guilty verdict is what we can say at least we have something. We have everything that they might have, but there's a reasonable probability. Yes. Versus what the government is saying would be more speculation. At least we have something concrete. Thank you both, and we will take the matter under advisement.